SNOWDEN *v.* DETROIT & MACKINAC RAILWAY CO.

Master and Servant—Dangerous Machinery—Personal Injuries—Statutes.

> An action for the death of plaintiff's decedent, alleged to have been caused by uncovered gearing in defendant's pumping station plant, in charge of deceased, cannot be based upon the violation of Act No. 285, Pub. Acts 1909, the pumping station and machinery in question not being within the provisions of the act. Kuhn and Bird, JJ., dissenting.

Error to Cheboygan; Sharpe, J., presiding. Submitted June 22, 1914. (Docket No. 71.) Decided July 23, 1915.

Case by Ellen Snowden, administratrix of the estate of John Snowden, deceased, against the Detroit & Mackinac Railway Company for the unlawful killing of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Reversed.

*Henry, Henry & Henry* (*James McNamara*, of counsel), for appellant.

*Homer H. Quay* and *Victor D. Sprague*, for appellee.

Ostrander, J. I am impressed that the act, the violation of which is relied upon to establish the negligence of defendant, cannot be held to apply to the machinery in charge of plaintiff's decedent. Plainly, the water tank and its machinery was not a factory, storehouse, or warehouse. The act should be made effective, as a police regulation, having reference to its scope and purposes as evidenced by the language employed. To make it apply to windmills, or to pumps operated by gasoline engines, upon farms, would be, I think, a plain extension of the scope and purpose of

the act. And yet, if held to apply in the case at bar, no sound reasoning can except from its operation such farm machinery. I disagree, therefore, with Mr. Justice BIRD upon the third point stated in his opinion, and hold that the judgment should be reversed and a new trial granted.

STONE, MOORE, and STEERE, JJ., concurred with OS-TRANDER, J. BROOKE, C. J., concurred in the result.

The late Justice MCALVAY took no part in this decision.

BIRD, J. (*dissenting*). Plaintiff's husband operated two pumping stations for the defendant railway, one at La Roque and the other at Tower. He lived at La Roque, and his habit was to operate the pump at his home town in the morning, and later take the train for Tower, returning home in the afternoon. On the 29th of October, 1912, he went to work as usual at 6:20 o'clock in the morning. A half hour later his wife followed him with his dinner, which he carried to Tower. When she arrived at the pump house, she found him on the floor with a large contusion on his head, and his clothing torn from his left arm. He was in a semi-conscious condition, from which he never rallied. He passed away in the evening of the same day of the injury. The negligence set up in the declaration was the failure of defendant to furnish the deceased with safe machinery with which to work, and also a failure to observe the provisions of section 15 of Act No. 285, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4023), with reference to the covering of gearings, etc. The trial court submitted the case to the jury upon the statutory count only, and they found a verdict for the plaintiff of $2,000.

The defendant requested a directed verdict at the close of the proofs, and assigned several grounds therefor, any one of which, if well taken, would dispose of the case in its favor.

1. It is first contended that the facts proven were not sufficient to support an inference of negligence on the part of defendant. The pumphouse was provided with a combination gasoline engine and pump, the gearings of which were not covered. The machinery was described as follows:

"The machinery consists of an engine and pump. * * * The engine is a gasoline engine. The gearing consists of a small cogwheel and a large cogwheel and a clutch. This clutch has knuckles which move out and in as the clutch is moved out and in to engage the other cogwheels. These knuckles have cotter pins. The clutch, knuckles, cotter pins, large cogwheels, and small cogwheel revolve; the clutch revolving with great rapidity when the machinery is in motion. * * * The method of starting the pump is to start the engine by turning on the spark and the gasoline and revolving the wheel. After the engine starts, the pump is engaged by means of the gearing. A part of this gearing—the clutch—has a knob on it, and the operator takes hold of this knob and holds it, keeping it from revolving, whereupon it automatically screws in, thus engaging all the gearing, and, when engaged, the knob cannot be held longer but flies out of the hand revolving at the rate named, to wit, 300 revolutions per minute; the small cogwheel and the big cogwheel being engaged with it."

It was the theory of the plaintiff that:

"While [the deceased was] engaging the clutch in his usual method as shown, plantiff's decedent's clothing on his left arm was caught by the cotter pins and other gearing in the immediate vicinity of his hands, and becoming engaged in the revolving gearing, threw plaintiff's decedent forward, tearing off the clothing from his arm, in which forward position plaintiff's decedent would be in such a position that the piston there situated and which operated backwards and forwards, east and west, plaintiff's decedent then facing the south with his head bowed from the force of his clothing being wound in the gearing, struck plaintiff's decedent on the head, making a hole extending across the top thereof, from ear to ear."

The testimony included a detailed description of the machinery and the manner in which it was usually started and operated by the deceased, the location and nature of his injuries were shown, as were the blood spots on the machinery and floor. It was also shown how the clothing torn from his left arm was wedged into the machinery. These facts, together with the other testimony, were sufficient to support plaintiff's theory as to the manner in which the injury occurred. The question as to whether the machinery constituted gearing, within the meaning of the statute, was also submitted to the jury. The proof was such that we think the trial court should have determined that question himself; but inasmuch as it was submitted to the jury, and their finding is in accord with the duty of the court, it does not appear to be prejudicial to the defendant.

2. But it is argued that, if an inference of negligence may be drawn from the facts proven, it is of no avail because Act No. 285 is unconstitutional by reason of a defective title; that the requirements of section 15 are not covered by the title.

The title of the act is:

"An act to provide for the creation of a department of labor; to prescribe its powers and duties; to regulate the employment of labor; to make an appropriation for the maintenance of such department, and to prescribe penalties for the violation of this act."

Section 15 of the act provides that:

"It shall be the duty of the owner of any factory, storehouse or warehouse, or his agent, superintendent or other person in charge of the same, to furnish or supply, or cause to be furnished or supplied, in the discretion of the factory inspector, where machinery is in use, proper shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys. All gearing or belting shall be provided with proper safeguards, and whenever possible machinery

shall be provided with loose pulleys. All vats, saws, pans, planers, cogs, set screws, gearing and machinery of every description shall be properly guarded when deemed necessary by the factory inspector."

It is insisted that there is nothing in the title of the act which will sustain a specific requirement of an individual or corporation to safeguard his or its machinery. The title of the act provides that it is "to regulate the employment of labor." The act defines under what conditions labor may be employed. It says in effect to the individual and corporation, if you employ labor around your machinery, you must cover the gearings. How else could the employment of labor be regulated? It would be idle to say that the employment of labor could be regulated and not have the provision of the law binding upon the employer of labor. There cannot well be employment of labor without an employer, and it is the employer that this part of the title is aimed at. The requirements of section 15 appear not only to be germane, but they appear to come squarely within the express terms of the title.

3. It is next contended that section 15 applies only to owners of factories, storehouses, and warehouses, and that this machinery was not located in any one of those structures. The pumping station and water tank, taken together, can reasonably be said to be a storehouse within the meaning of this act. If similar machinery were employed to elevate wheat into an elevator, the application of the statute would not be questioned. One elevates wheat and stores it, and the other water and stores it. While the pumphouse and water tank may not come within the strict letter of the statute, they do come within the spirit and reason of it, and should be so declared.

4. It is finally contended that the provision that all gearings or belting shall be provided with proper safe-

guards is limited by the words "when deemed necessary by the factory inspector," which occurs in the following sentence. This contention appears to have been decided adversely to defendant's construction in the case of *Tabinski* v. *Manufacturing Co.*, 168 Mich. 392 (134 N. W. 653).

There are some other assignments of error based upon the charge of the court, and his refusal to give certain requests tendered by the defendant; but, inasmuch as they involve the same propositions that have been herein discussed, it will be unnecessary to consider them.

We find no reversible error in the record, and the judgment should be affirmed.

KUHN, J., concurred with BIRD, J.